UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Irene Ramirez for Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order GRANTING in part and DENYING in part Amgen's and DaVita's Motions to Dismiss; GRANTING Fresenius' Motion to Dismiss; and DENYING Amgen's Motion to Transfer Venue**

Before this Court are Defendant Amgen's, DaVita's and Fresenius' separate Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and Defendant Amgen's Motion to Transfer Venue to the Middle District of Tennessee. A hearing on the motion was held on February 4, 2008. Having considered the papers filed by the parties and oral argument on the motion, the Court GRANTS in part and DENIES in part Amgen and DaVita's Motions to Dismiss, GRANTS Fresenius' Motion to Dismiss, and DENIES Amgen's Motion to Transfer Venue.

I.  FACTS

   A.  The Parties

Plaintiff Sheet Metal Workers National Health Fund ("Fund") is a welfare plan that provides post-retirement health benefits to approximately 17,000 retired members of the Sheet Metal Workers International Association. The Fund is governed by a Board of Trustees, whose chairman is Plaintiff Glenn Randle (collectively "Plaintiffs"). Defendants are Amgen, Inc. ("Amgen"), a publicly traded company and one of the largest pharmaceutical companies in the United States; DaVita, Inc. ("DaVita"), a provider of dialysis services for patients suffering from chronic kidney failure, or end stage renal disease; and Fresenius Medical Care Holdings, Inc. ("Fresenius"), a wholly owned subsidiary of Fresenius Medical Care AG & Co. in Germany,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

which operates dialysis services in the United States (collectively "Defendants").

Amgen is incorporated in Delaware, and has its corporate headquarters and principal place of business in Thousand Oaks, California. DaVita is incorporated in Delaware and has its headquarters in California. Fresenius is incorporated in New York, and headquartered in Massachusetts.

    B.    Background

This action arises out of Defendants' commercialization of two drugs - epoetin alfa, which Amgen markets in the U.S. as Epogen, and darbepoetin alfa, which Amgen markets in the U.S. as Aranesp (jointly referred to as "EPO"). Both of these drugs are known as erythropepoietin-stimulating agents, or ESAs, because they stimulate the formation of red blood cells.

The FDA approved Epogen in 1989 for the treatment of anemia in chronic renal failure patients (whether or not they are on dialysis), HIV-infected patients, cancer patients on chemotherapy, and for surgery patients to reduce allogeneic blood transfusion. (Comp. ¶¶ 33, 35.) Epogen's 2005 FDA-approved package insert regarding dosage and administration for patients with chronic renal failure states that "EPOGEN® may be given either as an IV or SC injection. In patients on hemodialysis, the IV route is recommended."[1] (Comp. ¶ 36.) The insert further states that "the dose should be adjusted for each patient to achieve and maintain a target hemoglobin not to exceed 12 g/dL." (Id.) In 2001, the FDA approved a similar drug, Aranesp, for the treatment of anemia associated with chronic renal failure (whether or not they are on dialysis). (Comp. ¶ 37.) In July 2002, the FDA approved Aranesp for the treatment of chemotherapy induced anemia in patients with non-myeloid malignancies. (Comp. ¶ 37.)

From 2002 through to at least 2007, Amgen issued a number of press releases regarding the positive results of clinical studies on the off-label use of Aranesp. (Comp. ¶ 42.) On February 16, 2007, *The Cancer Letter* published an article about the results of an October 2006 study regarding Aranesp's effectiveness on patients with head and neck cancer which had been closed early due to increased mortality rates. (Compl. ¶ 10.) On March 9, 2007, the Food and Drug Administration ("FDA") mandated a "black box" warning for the off-label use of EPO.

---

[1] IV refers to intravenous injection, and SC refers to subcutaneous injection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

(Comp. ¶¶ 11, 87.) The warning cautioned that use of ESAs to achieve a target hemoglobin of 12/dL or greater in cancer patients (1) "shortened the time to tumor progression in patients with advanced head and neck cancer receiving radiation therapy;" (2) "shortened overall survival and increased deaths attributed to disease progression in patients with metastatic breast cancer receiving chemotherapy;" and (3) "increased the risk of death in patients with active malignant disease not under treatment with chemotherapy or radiation therapy." (Comp. ¶ 87.)

    C.    <u>Plaintiffs' Complaint</u>

On August 28, 2007, Plaintiffs filed a putative class action Complaint alleging that from 2002 until March 9, 2007, Defendants engaged in a massive scheme to defraud the Fund and the Class and substantially increase the sales of the drugs Epogen (generic epoetin alfa) and Aranesp (generic darboetin alfa) (collectively "EPO"), manufactured by Amgen. Plaintiffs' proposed class consists of "all third-party payors that paid any portion of the purchase price of Epogen and Aranesp ('EPO'), when prescribed for purposes and at dosages not specified on its label between May 21, 2002 through March 9, 2007 (the "Class Period")." (Comp. ¶ 14.)

The Complaint alleges that Defendants unlawfully promoted the use of EPO for unsafe purposes outside the bound of their Food and Drug Administration ("FDA") approval, including (i) to treat cancer caused amenia; and (ii) to treat anemia in patients suffering from heart failure. (Comp. ¶¶ 3, 5.) Amgen allegedly accomplished this through its participation in a series of misleading statements/omissions in press releases, Continuing Medical Education ("CME") presentations, physician brochures and other marketing materials about the efficacy of EPOs for various off-label uses. (Comp. ¶ 5.) Additionally, the Complaint alleges Amgen acted in concert with DaVita and Fresenius to conduct a related scheme to boost Defendants' profits from the EPOs by unlawfully promoting their intravenous administration to treat anemia in kidney dialysis patients. (Comp. ¶ 7.)

The Complaint alleges that Amgen carried out its deceptive marketing scheme through the use of two separate enterprises: (1) the Off-Label Marketing Enterprise, consisting of Amgen, the National Anemia Action Council (NAAC") and CancerCare, and (2) the Kidney Dialysis Enterprise, consisting of Amgen, DaVita and Fresenius. (Comp. ¶¶ 92-93.) The Off-Label Marketing Enterprise's alleged purpose was to profit for off-label use and extract excessive, illegal payments from third-party payors such as Plaintiff. (Comp. ¶ 94.) The Complaint alleges, among other things, that Amgen provides preliminary research and data regarding the purported benefits of off-label use of EPO to NAAC for use in its education and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

continuing medical education material, physician handbooks/brochures and on it website, and to CancerCare for use on its website and continuing medical education courses it sponsors. (Comp. ¶ 96.)  The Kidney Dialysis Enterprise's alleged purpose was to profit from increased sales of EPO by promoting wasteful dispensing and administration practices that resulted in the achievement of hemoglobin of 12g/dL, an unlawful off-label use of the drug.  (Comp. ¶ 99.) The members of the Kidney Dialysis Enterprise allegedly worked together to promote intravenous administration of EPO to kidney dialysis patients, a route which had the effect of achieving a hemoglobin target of 12 g/dl or above, an unlawful, off-label use of these drugs. (Comp. ¶ 99.)

The Complaint states five causes of action: (1) violation  of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1962(c), against Amgen; (2) RICO violations against all Defendants; (3) violation of California Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., against all Defendants; (4) violation of California False Claims Act ("FCA"), Bus. & Prof. Code §§ 17500, *et seq*., against all Defendants; and (5) unjust enrichment.  All three Defendants now move to dismiss under Fed. R, Civ. P. 12(b)(1) and 12 (b)(6).  Additionally, Amgen moves to transfer venue to the Middle District of Tennessee.

II.     MOTIONS TO DISMISS

    A.     Legal Standards

        *1.     Rule 12(b)(1)*

Rule 12(b)(1) allows a motion to dismiss for lack of subject matter jurisdiction.  It is a fundamental precept that federal courts are courts of limited jurisdiction, and limits upon federal jurisdiction must not be disregarded or evaded.  Fed. R. Civ. P. 12(b)(1)*; Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396 (1978).  The burden rests with the plaintiff to establish that subject matter jurisdiction is proper.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673 (1994).  At  the pleading stage, a plaintiff can meet this burden by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action.  *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780 (1936); Fed.R.Civ.P. 8(a)(1).  An action should be dismissed for lack of  subject matter jurisdiction only if it is clear that the jurisdictional deficiency cannot be cured by amendment.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

  *2.* *Rule 12(b)(6)*

  Under Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1969 (2007); *see Balistreri v.. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory). Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atlantic*, 127 S.Ct. at 1968 (*abrogating Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).

  The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006); *Balistreri,* 901 F.2d at 699. Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) *(citing Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

  B. <u>Discussion</u>

  Although Amgen, Fresenius and DaVita have filed three separate motions to dismiss, the motions overlap in many of their arguments. Therefore, the Court will address each motion's arguments in the context of each cause of action.

  *1.* *Article III Standing*

  All three Defendants contend that the Court lacks Article III jurisdiction over this lawsuit. To have constitutional standing to challenge the Defendants' actions, the Fund must satisfy a three-part test established by the Supreme Court. First, the Fund must have suffered an "injury in fact" which is (a) concrete and particularized and (b) actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Second, the Fund must show a causal connection between the injury and the conduct complained of, which is "fairly. . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

action of some third party not before the court." *Id.* (*quoting Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)). Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted). Defendants contend that the Fund has failed to satisfy the first two elements, injury-in-fact and causal connection.

*(a) Injury-In-Fact*

Amgen asserts the Complaint fails to allege any injury-in-fact caused by its alleged wrongful conduct. To the contrary, the Fund claims economic injury in that "Plaintiff and other Class members paid millions of dollars in claims for EPOs prescribed for unsafe off-label uses as a result of Defendants' fraudulent scheme . . . ." (Comp. ¶ 113.) "Pecuniary injury is clearly 'a sufficient basis for standing.'" *Central Arizona Water Conservation Dist. v. U.S. E.P.A.*, 990 F.2d 1531, 1537 (9th Cir. 1993) (*quoting Fair v. EPA,* 795 F.2d 851, 853-54 (9th Cir. 1986).) While Defendants attack the Fund's allegations for failing to identify any instance of any particular doctor writing an off-label Epogen or Aranesp prescription for a Fund member in reliance on Amgen's marketing, this is not a requirement at this stage of litigation. At the pleading stage, general factual allegations of injury resulting from the Defendants' conduct may suffice, for on a motion to dismiss the Court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan,* 497 U.S. at 889 (citation omitted). The Court concludes that the Fund's economic injury is sufficiently concrete and imminent to accord it standing to litigate this action.

*(b) Causation*

Defendants next assert that the Fund lacks standing because it fails to allege a sufficient causal nexus between its purported injury and the alleged wrongdoing. Specifically, Defendants argue that to establish causation, the Fund must allege that: "(1) a doctor relied on the alleged misrepresentations (rather than her own experience with the medicines, knowledge or training) to prescribe medicines she would otherwise have not prescribed for a Fund member for an off-label purpose, and (2) Medicare paid for the off-label prescriptions because of the alleged misrepresentations, and (3) in the absence of the alleged misrepresentation, the Fund would not have paid for the medicines." (Amgen Motion at 8.)

As set forth in the Complaint, the Fund and the Class would not have paid hundred of millions of dollars for Epogen and Aranesp for unsafe, off-label purposes absent Defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

omissions and misrepresentations regarding the drugs.  (Compl. ¶¶ 14, 110, 126, 131.)  Because the Complaint alleges a general deceptive scheme to mislead the decision-makers of third-party payors so they would reimburse claimants for off-label uses, the Fund need not allege specific doctors' reliance on the alleged representations.[2]  (Compl. ¶¶ 136, 143.)  Rather, for the purposes of standing, the Fund need only allege, as it has done here, injury that is "fairly traceable" to Defendants' alleged deceptive scheme.  *See In re Zyprexa Products Liability Litigation*, 493 F.Supp.2d 571, 577 (E.D. N.Y. 2007) ("other courts have long recognized the right of [health care benefit providers] to recover from drug companies amounts that were overpaid due to illegal or deceptive marketing practices") (*quoting Desiano v. Warner-Lambert Co.,* 326 F.3d 339, 350 (2d Cir. 2003)).  Accordingly, the Court concludes that Plaintiffs have sufficiently established their standing to maintain this action.

> 2. *RICO Claims (Counts I and II)*

Next, Defendants challenge the Fund's RICO claims.  Count I alleges violation of 18 U.S.C. § 1962(c) against Amgen in connection with the activities of the Off-Label Marketing Enterprise.  (Comp. ¶¶ 123-127.)  Count II alleges violation of 18 U.S.C. § 1962(c) against Amgen, DaVita and Fresenius, in connection with the Kidney Dialysis Enterprise.  (Id. at ¶¶ 128-132.)

> 18 U.S.C. § 1962(c) provides in relevant part:
> It shall be unlawful for any person employed by or associated with any

---

[2]The Court recognizes that in the motions to transfer venue brought by Amgen in the previously related cases - *Painter's District Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, CV 07-3880 PSG (AGRx); *United Food & Commercial Worker's Central Pennsylvania & Regional Health & Welfare Fund*, CV 07-3623 PSG (AGRx); *Vista Healthplan, Inc. v. Amgen, Inc.*, CV 07-3711 PSG (AGRx); and *Linda A. Watters, Comm'r, Office of Fin. & Ins. Services for the State of Michigan v. Amgen, Inc.*, CV 07-5332 - the Court found that the convenience of witnesses favored transfer, since Amgen would require physician testimony in order to defend itself from plaintiffs' claims.  However, the Court made this determination while weighing the convenience and fairness factors solely in the context of the motions to transfer.  Such determination has no bearing on the issue of whether or not Plaintiffs have standing to maintain their claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*(a)   RICO Standing*

All three Defendants argue that the Fund's RICO claims fail for lack of standing. RICO grants standing to anyone injured in their "business or property" as a result of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1964(c). According to Defendants, the Complaint fails the requirement that a RICO injury be "concrete" and actual, as opposed to "purely speculative" and amorphous. (Amgen Motion at 10-11; Fresenius Motion at 6; DaVita Motion at 17.) As with their Article III challenge, Defendants complain that the Fund has not alleged that any prescription for which they paid that actually harmed a member to whom it was prescribed. (Id.)

Once again, Defendants misconstrue the Fund's alleged injuries. The Fund does not seek damages for harm that unsafe, off-label prescriptions of Epogen and Aranesp caused its members; rather, it seeks damages solely for its payments for EPO prescriptions which were fraudulently promoted by Defendants for unsafe, off-label uses. The Complaint's alleged economic injury to business and property caused by paying for EPO for unsafe, off-label purposes is sufficient to establish standing for the Fund's RICO claims.

Defendants further argue that the RICO claims independently fail because the Fund has not alleged that the purported predicate RICO violations - mail and wire fraud - were both a "but for" cause and the proximate cause of the claimed injury. One of the central elements of RICO proximate causation is "[a] direct relationship between the injury and the alleged wrongdoing." *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip,* 185 F.3d 957, 963 (9th Cir. 1999).

Amgen contends that because the alleged injury requires actions and decisions by many third parties, *i.e.* doctors, patients and Medicare, there can be no direct injury as a matter of law. (Amgen Motion at 12.) Defendant DaVita contends that the Fund cannot show a direct causal link between the alleged fraud - Defendants' promotion of intravenous administration of Epogen - and the alleged injury - the Fund's having to pay for reimbursement for Epogen for unsafe, off-label use, because the physician and not Davita determines the amount of Epogen to administer. (DaVita Motion at 16.) Thus, "there will always be at least one intervening cause between the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

alleged conduct of DaVita and Plaintiff's harm." (Id.)

The Fund in the present case asserts it has suffered economic injury by paying for EPO for unsafe, off-label purposes, which it would not have done absent Defendants' unlawful conduct. (Comp. ¶¶ 14, 126, 131.) The Fund also describes how Amgen carried out an elaborate scheme, involving misrepresentations and non-disclosures, to promote off-label use of EPO. (Comp. ¶¶ 5-6, 40-55, 63-97.) Such allegations are adequate for causation purposes as to Defendant Amgen. Although the Fund would not have reimbursed a claim for EPO without a physician's prescription, this does not negate the directness of the injury sustained by the Fund. Nor does the fact that the Fund conditions its reimbursement on Medicare approval for such reimbursement attenuate causation. As stated in the Complaint, Defendants' conduct caused Medicare to approve payment for dangerous and inappropriate uses of EPO, which necessarily resulted in the Fund paying for dangerous and inappropriate uses of EPO. (Comp. ¶¶ 19, 110, 113.)

The Complaint sufficiently alleges causation as to DaVita as well. The Complaint alleges that the purpose of the Kidney Dialysis Enterprise was "to profit from increased sales of EPO by promoting wasteful dispensing and administration practices that had the effect of achieving a hemoglobin if 12 g/dL - an unlawful, off-label use of these drugs - and thereby extract excessive and illegal payments from third-party payors, including Plaintiff and Class Members." (Comp. ¶ 99.) The Complaint further alleges that DaVita "promoted the intravenous administration of EPO to its kidney dialysis patients . . . ." and cites one example from its website, "where DaVita posted an article by Dr. Robert Lynn, 'Common drugs prescribed for dialysis patients,' which states that '[m]ost patients with anemia due to chronic kidney disease who are not yet on dialysis will receive it as an injection - directly under the skin. Most patients with renal failure on hemodialysis will get the hormone during each treatment by intravenous injection into the return dialysis tubing.'" (Comp. ¶ 104.) The alleged injury is direct: the Fund overpaid for EPO because of the Kidney Dialysis Enterprise's unlawful promotion.

Amgen and DaVita, however, point to cases where health benefit plans sued tobacco companies for the increased cost of providing medical coverage to its smokers, and the courts held that health benefit plans failed the direct injury requirement. (Amgen Motion at 13.) (*citing Oregon Laborers-Employers Health & Welfare Trust Fund,* 185 F.3d at 963 and *International Broth. of Teamsters, Local 734 Health and Welfare*, 196 F.3d 818, 823 (7th Cir. 1999)). These cases are inapposite, as they involve injuries derivative to the members of the health benefit plans. Here, the Fund's claims rest not on whether its members suffer injury, but rather, derive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

from its own payment for costs of EPO prescriptions that were fraudulently promoted for unsafe, off-label uses. Because the Fund has satisfactorily alleged direct injury to its business or property, Amgen's and DaVita's motions to dismiss based on RICO standing are DENIED.

As for Defendant Fresenius, however, the Complaint fails to adequately allege causation. Indeed, the Complaint's specific allegations regarding Fresenius are woefully inadequate.[3] The Complaint alleges that Fresenius' SEC filings reveal that reimbursement and revenue from EPO account for approximately 21% of the company's North American revenue, and "a change in utilization in EPO could materially reduce [its] revenue and operating profit." (Comp. ¶ 101.) These allegations simply do not provide the requisite link between Fresenius' role in accomplishing the purpose of the Kidney-Dialysis Enterprise, "to profit from increased sales of EPO by promoting wasteful dispensing and administration practices ," and the Fund's alleged economic injuries. (Comp. ¶ 99.) Consequently, the Court GRANTS Fresenius' motion to dismiss the RICO claims against it.

*(b)    Rule 9(b) Specificity*

The Fund's RICO claims are based on Defendants' alleged predicate acts of mail and wire fraud. Defendants seek dismissal of the RICO claims in Counts I and II, arguing that the Fund fails to plead these claims with sufficient specificity. "Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1065-66 (9th Cir. 2004). Therefore, "the pleader must state the time, place, and specific content of the false misrepresentations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 541 (9th Cir. 1989).

The Complaint alleges that Defendants engaged in a "pattern of racketeering activity [that included] numerous acts of mail and wire fraud in furtherance of Defendants' fraudulent scheme, including press releases, educational and CME materials and/or physician handbooks/brochures,

---

[3]The Complaint's only allegations specific to Fresenius are found in Paragraphs 22, 100 and 101. (Comp. ¶¶ 22, 100-101.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

which Amgen and other participants in the [Off-Label Marketing Enterprise] utilized to promote off-label uses of EPO . . . ."  (Compl. ¶ 108.)

The Fund has sufficiently pled "time" by mentioning specific dates of press releases issued by Amgen.  (*see, e.g.* Compl. ¶¶ 41, 43-50, 52-54).  The Fund cannot state the "time" of an omission.  *See David K. Lindemuth Co. v. Shannon Financial Corp.,* 637 F.Supp. 991, 995 (N.D.Cal.1986).  The Complaint also sufficiently alleges "place" by stating that the alleged acts took place through the United States mails and wires.  (Compl. ¶ 108.)  As for omissions, there is no "place" where they occurred since the Fund does not allege an act, but rather a failure to act.  The Fund further alleges that Defendants used the mail and wires "to disseminate marketing materials, including press releases, educational and CME materials and/or physician handbooks/brochures, which [Defendants] utilized to promote off-label uses of EPO . . . ."  (Compl. ¶ 108.)  Finally, the Complaint sufficiently identifies the roles of Defendants Amgen and DaVita in the alleged scheme.  (Compl. ¶¶ 96-107.)  Construing the allegations of the Complaint favorably to the pleader as the Court must, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the Fund has pled the elements of mail and wire fraud sufficiently to withstand Defendants' motions to dismiss.

> *(c)     Whether FDA Approval Bars the Fund's RICO claims against DaVita?*

Additionally, Defendant DaVita argues that the FDA approved labeling defeats the Fund's RICO claim against it, and proceeding with the claim would circumvent the FDA's authority.  The Fund alleges that the participants of the Kidney Dialysis Enterprise - DaVita, Fresenius and Amgen - were promoting intravenous administration over subcutaneous administration in order to increase the sales of Epogen (of which significantly more was utilized in intravenous versus subcutaneous administration) and maximize the discounts DaVita would receive under their agreements with Amgen.  (Compl. ¶¶ 7-8, 104.)  The Fund contends Defendants did this, even though the effect was to achieve dangerously high hemoglobin targets of 12 g/dL or higher - an unlawful, off-label use.  (Id.)

DaVita points to Paragraph 36 of the Complaint, where the Fund admits that the  FDA has approved IV administration of Epogen as lawful.  (Comp. ¶ 36.)  Here, the Complaint quotes Epogen's 2005 FDA-approved package, which states that "EPOGEN® may be given either as an IV or SC injection.  In patients on hemodialysis, the IV route is recommended . . . ."  (Id.)  However, DaVita conspicuously ignores the next sentence of Paragraph 36, which states:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

"Significantly, the insert further indicates that 'the dose should be adjusted for each patient to achieve and maintain a target hemoglobin not to exceed 12g/dL.'" (Id.)  As is clear from the Complaint, the RICO claim is not, as DaVita argues, premised on drug promotion "consistent with the FDA approved labeling."  Therefore, to allow the Fund to proceed with its RICO claim would not circumvent the FDA's authority.  Accordingly, DaVita's Motion is DISMISS the RICO claim is DENIED.

### 3. FDCA Preemption

All three Defendants move to dismiss the claims in the Complaint, arguing that they are preempted by the Federal Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301, *et seq.*  Amgen and Fresenius seek dismissal of all claims, while DaVita seeks dismissal only of the three state law consumer fraud claims (UCL, FCA and unjust enrichment) based on implied conflict preemption.

It is a well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, preempts state laws that "interfere with, or are contrary to," federal law.  *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824).  This occurs in three ways: (1) Congress defines explicitly the extent to which its enactments pre-empt state law (express preemption); (2) Congress regulates conduct in a field that Congress intended the Federal Government to occupy exclusively (filed preemption); and (3) state law actually conflicts with federal law (implied conflict preemption).  *English v. General Electric Co.,* 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).  Preemption fundamentally is a question of congressional intent.  *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988).

21 U.S.C. § 337(a) provides that "all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."  "Courts have generally interpreted this provision to mean that no private right of action exists to redress alleged violations of the FDCA."  *Summit Technology v. High-Line Medical Instruments,* 922 F.Supp. 299, 305 (C.D.Cal. 1996) (hereinafter "*Summit I*") (citations omitted).  Instead, "the right to enforce the provisions of the FDCA lies exclusively within the federal government's domain, by way of either the FDA or the Department of Justice."  *Id.*  On the other hand, the FDCA does not explicitly preempt (or act to the exclusion of other statutes) the field in which it operates.  *Mutual Pharmaceutical Co. v. Ivax Pharmaceuticals, Inc*., 459 F.Supp.2d 925, 934 (C.D.Cal. 2006).  Accordingly, the Court considers implied conflict preemption to be the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

appropriate doctrine under which to analyze Defendants' preemption arguments.

Conflict preemption exists if compliance with both federal and state law is impossible, or "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Quicken Loans, Inc. v. Wood*, 449 F.3d 944, 949 (9th Cir. 2006) (*quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)).

Here, the purpose and objective of the FDCA is to regulate the safety of drugs. *See, e.g. Mutual Pharmaceutical Co. v. Ivax Pharmaceuticals, Inc.,* 459 F.Supp.2d 925, 933 (C.D.Cal. 2006) ("The FDCA . . . is []directed to protecting the public by ensuring that drugs sold in the marketplace are 'safe, effective and not misbranded . . . .") (*citing Sandoz Pharmaceuticals v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230 (3rd Cir. 1990); *see also Sita v. Danek Medical, Inc.*, 43 F.Supp.2d 245, 261 (E.D.N.Y. 1999) ("The FDCA and MDA's are safety statutes"). Thus, the issue before the Court is whether California consumer protection laws pose an obstacle to the FDA's congressionally-mandated regulation of prescription drugs?

The Third Circuit Court of Appeals recently addressed this very question in *Pennsylvania Employees Ben. Trust Fund v. Zeneca Inc*., 499 F.3d 239 (Del. 2007). In that case, a state employee's benefit fund brought a class action suit against a drug manufacturer, alleging deceptive advertising of the prescription drug Nexium, and asserting claims under various states' consumer protection statutes, as well as common-law claims including unjust enrichment. *Id.* On the drug manufacturer's motion to dismiss, the district court concluded that Nexium advertisements that complied with the FDA-approved labeling were not actionable under state consumer protection laws because those laws were preempted by federal law. *Id.* at 247. On appeal, the Third Circuit court asked whether state consumer fraud laws pose an obstacle to the FDA's congressionally-mandated regulation of prescription drug advertising, and determined that they did. Analyzing the stated purpose of the FDCA, "to protect the public health by ensuring the . . . human drugs are safe and effective," 21 U.S.C. § 393(b) and to ensure the "drug is safe for use under the conditions prescribed, recommended, or suggested in the proposed labeling thereof," 21 U.S.C. § 355(d), as well as the many regulations regarding advertising for prescription drugs, the court determined that "the FDA envisioned itself occupying an ongoing and extensive role in the supervision of prescription drug advertising." *Id.* at 249. The *Zeneca* court thus held that implied conflict preemption precluded the fund's claims for violations of state consumer protection statutes. *Id.* at 251. The court explained that "the purpose of protecting prescription drug users in the FDCA would be frustrated if states were allowed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

interpose consumer fraud laws that permitted plaintiffs to question the veracity of statements approved by the FDA." *Id.* at 251.

The facts in *Zeneca* are similar to those in the case at bar. Both cases involve fund plaintiffs asserting claims under state consumer protection statutes for deceptive advertising of prescription drugs. In both cases, the drugs at issue had FDA-approved labels. The Court finds *Zeneca's* reasoning persuasive and applicable to the instant case.

The Fund, in its UCL and FCA claims, allege that Defendants' unlawful and deceptive conduct included "misbranding of products." (Comp. ¶¶ 134(d), 142(b)). In addition, the Fund in its UCL claim, alleges Defendants engaged in deceptions that "violate the . . . . (FDCA) and its implementing regulations." (Id. at ¶ 137.) The FDCA specifically addresses misbranding of drugs, stating that "[a] drug or device shall be deemed to be misbranded . . . if its labeling is false or misleading in any particular." 21 U.S.C. § 352(a). Consequently, in order to determine whether Defendants' committed the underlying UCL violations of "misbranding of drugs" and violating FDCA and FDA regulations, or whether the Fund violated false advertising laws by misbranding drugs, the Court would be required to apply and interpret FDA regulations, including 21 C.F.R. § 1.21(a)(i)-(ii) ("Labeling of a . . . drug . . . shall be deemed to be misleading if it fails to reveal facts that are: (1) Material in light of other representations made or suggested by statement, word, design, device or any combination thereof; or (2) Material with respect to consequences which may result from use of the article under: (i) The conditions prescribed in such labeling or (ii) such conditions of use as are customary or usual."). Such an action would not only "usurp the FDA's discretionary role in the application and interpretation of its regulations," *see Summit I*, 922 F.Supp. at 306 (citing *Fender v. Medtronic, Inc.*, 887 F.Supp. 1326, 1332 (E.D. Cal. 1992), but also frustrate the purpose of the the FDCA since it would allow the Fund "to question the veracity of statements approved by the FDA." *See Zeneca* 499 F.3d at 251. For these reasons, the Court concludes that, to the extent the state law claims challenge the content of the FDA labels through allegations of misbranding, or assert violations of the FDCA or its implementing regulations, the FDCA preempts the Fund's UCL and FCA claims.

The Fund asserts, however, that implied conflict preemption does not apply because there is not an irreconcilable conflict between the state consumer fraud laws and the FDCA. The Fund argues it is entitled to maintain a private right of action because it is not trying to enforce the FDCA or intrude on the FDA's jurisdiction over safety. Rather, "[t]he gravamen of the Complaint is that the Defendants' nondisclosures and false promotions caused the Fund to pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

for unnecessary EPO." (Opp'n at 24.) According to the Fund, its allegations about Defendants' failures to disclose the dangers of off-label EPO relate to the claim that, had it known the truth, it would not have paid for challenged off-label use of EPO, "not to protect the health and safety of the general public. (Id. at 25.) The Fund asserts that the Complaint's reference to the FDCA "only provide a backdrop to the alleged RICO and state law violations." (Id. at 26.)

The Court finds the Fund's references to the FDCA to be more than just a "backdrop." Counts III and IV (the UCL and FCA) of the Complaint specifically list "misbranding of drugs" and other deceptions that violate the FDCA as part of Defendants' allegedly unfair and fraudulent practices. (Comp. ¶¶ 134(d), 142(b)). That 21 U.S.C. § 352(a) and 21 C.F.R. § 1.21(a)(i)-(ii) expressly address this issue convinces the Court that the FDA retains exclusive authority in the field of misbranding of drugs.

In light of *Zeneca,* the Court concludes that the FDCA preempts the Fund's state law claims, as pled, because such claims constitute an impermissible attempt to privately enforce the FDCA and FDA regulations. As stated earlier, there is no private right of action to *enforce* or *restrain* violations of the FDCA. 21 U.S.C. § 337(a). Accordingly, the Court GRANTS dismissal of Counts III and IV (the UCL and FCA claims), with leave to amend.

    *4.    ERISA Preemption*

Amgen argues that ERISA preempts all of the Fund's claims, because their adjudication would inevitably require the Court to interpret and apply the terms of an employee benefit plan. To begin with, ERISA does not preempt Plaintiffs' RICO claims because § 1144(a) only preempts state laws, and not federal laws such as RICO. Furthermore, having dismissed Plaintiffs' California UCL, FCA and common law unjust enrichment claims, the Court need not address whether ERISA preempts these claims.

    *5.    Medicare Preemption*

Having dismissed the Fund's state law claims, the Court need not address Defendants Fresenius and Amgen's argument for dismissal of these claims based on Congress' complete occupation in the field of Medicare reimbursements.

    *6.    California Claims (Counts III, IV)*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

Amgen, Fresenius and DaVita argue for dismissal on the premise that non-California residents are precluded as a matter of law from asserting claims under the UCL or FCA. Amgen alternatively argues that even if the Court allows extraterritorial application of California law to the Fund's claims, California choice of law rules would preclude such claims. Because the Court has dismissed these claims, the Court does not address Defendants' arguments.

> 7.   *Unjust Enrichment (Count V)*

Lastly, all three Defendants move to dismiss the Fund's unjust enrichment claim. Under California law, unjust enrichment "is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal.App.4th 379, 387, 20 Cal.Rptr.3d 115 (Ct.App. 2004) (citations omitted). However, many courts have found that although labeled "unjust enrichment," the causes of action could be understood as claims for restitution. *See, e.g. Id.;Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448, 9 Cal.Rptr.2d 774 (1992); *McKell v. Wash. Mut. Inc.,* 142 Cal.App.4th 1457, 1490, 49 Cal.Rptr.3d 227 (Ct.App. 2006). This is precisely the situation in the present action. Although Count V is entitled "unjust enrichment," it is clear that the Fund is seeking restitution, since the Complaint states that "Defendants' retention of funds paid by Plaintiff and Class members for excessive and wrongful reimbursement of claims for EPO violates the fundamental principles of justice, equity, and good conscience." (Comp. ¶ 147.)

Nonetheless, because the Fund's RICO claims survive, and because the Fund may be able to state UCL and FCA claims, the Fund cannot show there is no adequate remedy at law. It is a basic doctrine of jurisprudence that an equitable action is barred where there is an adequate remedy at law against the same person from whom relief in equity is sought. *See Morales v. Trans World Airlines*, 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Mort v. United States*, 86 F.3d 890 (9th Cir. 1996). Accordingly, the Fund's claim for unjust enrichment is DISMISSED with prejudice.

III.   MOTION TO TRANSFER

   A.   Legal Standard

Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1401(a). A determination of whether an action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

should be transferred is a two-step analysis. First, the court must determine whether the action "might have been brought" in the potential transferee court. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 414 (9th Cir. 1985). If so, then the court makes an "individualized, case-by-case determination of convenience and fairness," weighing the convenience of the parties, the convenience of the witnesses, and the interest of justice. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). In making this determination, the Ninth Circuit provides other factors the court may consider, including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones,* 211 F.3d at 498-99.

The burden is on the moving party to show that transfer is appropriate. *See Commodity Futures Trading Comm'n. Savage,* 611 F.2d 270, 279 (9th Cir. 1979); *Carolinas Cas. Co. v. Data Broadcasting Corp.,* 158 F.Supp.2d 1044, 1048 (N.D.Cal. 2001). Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue. *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Despite this wide latitude, a defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

B.   Discussion

Amgen argues that the Funds could have brought the suit in Tennessee, and a weighing of convenience and fairness factors favor transfer. Defendants Fresenius and DaVita oppose Amgen's motion. For the following reasons, the Court denies Amgen's Motion to Transfer Venue.

Transfer under § 1404(a) is limited to courts where the action might have been brought. *See Hoffman v. Blaski,* 363 U.S. 335, 344 (1960); *A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal*., 503 F.2d 384, 386 (9th Cir. 1974). The transferee court must have had complete personal jurisdiction over defendants, subject matter jurisdiction over the claim, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

proper venue had the claim originally been brought in that court. *See Hoffman,* 363 U.S. at 343-44.

Given Amgen's failure to brief this issue,[4] the Court cannot determine whether the Middle District of Tennessee satisfies all three of these requirements. The court has proper subject mater jurisdiction based on the federal RICO claims. However, it is not clear whether venue in the Middle District of Tennessee is proper under 28 U.S.C. § 1391, or whether that transferee court would have complete personal jurisdiction over all three Defendants. This basis alone provides the Court with sufficient justification to deny Amgen's motion. However, even assuming the Fund could have brought their action in Tennessee, a weighing of transfer factors shows the balance of factors weighs against transfer.

The two remaining Defendants - Amgen and DaVita - are both located in California. Although the Fund is located in Tennessee, the Fund originally filed its case in California. Thus, it appears the convenience of parties weighs against transfer. As for access to sources of proof, DaVita argues that because the relationship between Defendants will be an issue in this case, much of the proof DaVita will need to defend itself against the RICO claims is located in this district. As Amgen has failed to raise any arguments why Tennessee has better access to sources of proof, the Court finds that this factor also weighs against transfer. Finally, there is a strong presumption in favor of the plaintiff's choice of forum, *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000), which here, is California. Although the named plaintiff's choice of forum is given less weight when an individual brings a derivative suit or represents a class, *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987) (internal citation omitted), the Fund now wishes to eschew its original choice of forum. (See Plaintiff's Memorandum of Points and Authorities in Response to Defendant Amgen Inc.'s Motion to Transfer Venue at 1.) The Court does not give much deference to the Fund's second choice of forum. Had the Fund wanted to file this action in Tennessee it could have done so. Accordingly, this factor too weighs against transfer.

In sum, Amgen, who as the moving party has the burden to show that transfer is

---

[4]Amgen merely states that "[g]iven the similarity of the Complaint in this action to those in United Food, Painters, and Watters actions, a transfer of this action to the Middle District of Tennessee would be appropriate for many of the reasons set forth in this Court's Orders of November 13, 2007, and December 4, 2007, transferring each of those actions to each Plaintiff's home jurisdiction, pursuant to 28 U.S.C. § 1404." (Amgen's Motion to Transfer at 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-5620 PSG (AGRx) | Date | February 20, 2008 |
|---|---|---|---|
| Title | Sheet Metal Workers National Health Fund and Glenn Randle v. Amgen, Inc., DaVita Inc. and Fresenius Medical Care Holdings, Inc. | | |

appropriate, has failed to satisfy the requirements of either step in the two-step analysis. Therefore, the Court DENIES Amgen's Motion to Transfer Venue.

IV.  CONCLUSION

For the foregoing reasons, the Court hereby ORDERS the following:

1. Counts I and II (the RICO claims) against Defendant Fresenius are DISMISSED, with leave to amend. Counts I and II survive as to Defendants Amgen and DaVita.

2. Counts III and IV (UCL and FCA claims) against all Defendants are DISMISSED, with leave to amend.

3. Count V (unjust enrichment) against all Defendants is DISMISSED, with prejudice.

4. Amgen's Motion to Transfer Venue to the Middle District of Tennessee is DENIED.

5. Plaintiffs are ordered to file an amended complaint within 30 days of the date of this Order.

IT IS SO ORDERED.

|  | : |
|---|---|
| Initials of Preparer | IR for WH |